## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANTHONY CHISLEY, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. DKC-14-1322 |
| FRANK BISHOP, et al. | * | |
| Defendants | * | |

***

## MEMORANDUM OPINION

Pending is Defendants' Response to Show Cause, construed as a Motion for Summary Judgment.  ECF No. 5.  Plaintiff was advised that the Response would be construed as a Motion for Summary Judgment, of his right to file an Opposition Response, and of the consequences of failing to do so.  ECF Nos. 6-7.  He has replied.  ECF Nos. 8 & 10.[1]  For the reasons that follow, Plaintiff's request for injunctive relief shall be denied and judgment shall be entered in favor of Defendants.

## Background

Plaintiff, an inmate confined at North Branch Correctional Institution (NBCI), alleges two prison gangs have placed "contracts" on his life[2] and, despite making NBCI administration aware of those threats, nothing has been done to protect him.  He asserts that he was previously assigned to Administrative Segregation where he was "safe behind the door," but after filing lawsuits against staff he was removed from his single cell and designated to be placed in a double cell in general population.  ECF No. 1.

---

[1] Plaintiff has filed a "Motion of Inquiry re Motion for a Preliminary Injunction."  ECF No. 10.  Construed as a motion, the document will be denied.  The court has, however, considered the filing as additional opposition to the dispositive motion.

Plaintiff's Motion for Leave to Proceed in Forma Pauperis (ECF No. 2) shall be granted.

[2] Plaintiff claims to have cooperated with prison staff regarding gang activity.

He claims that he was single celled for 13 years. *Id*. He states that when he was designated for general population he received a rule infraction for disobeying an order after he refused housing due to his fear for his safety. *Id*. He seeks an order that he be single celled, placed on protective custody and transferred out of the Western Region to Patuxent Institution. He also seeks unspecified monetary damages. *Id*.

Plaintiff submits several documents to support his claim that he sought and has been denied protective custody housing. ECF No. 8, Attachments. He indicates that he provided the names of 47 "enemies" but correctional staff refused to investigate his complaints. *Id*. He claims that because his fears have been ignored, he became stressed out, paranoid and so overwhelmed he attempted suicide. ECF No. 1. He further alleges that he continued to receive infractions for refusing housing and when his segregation time has expired he will be forced to go into general population. *Id*.

A response to an Administrative Remedy Request filed by Plaintiff indicates that his claims were investigated but were not verified; his request for protective custody was denied and he will be returned to general population when his segregation sentence expires. ECF No. 8, p. 10.

### Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## Analysis

A preliminary injunction is an extraordinary and drastic remedy. *See Munaf v. Geren*, 553 U.S. 674, 689-90 (2008). To obtain a preliminary injunction, a movant must demonstrate that: 1) he is likely to succeed on the merits; 2) he is likely to suffer irreparable harm in the absence of preliminary relief; 3) the balance of equities tips in his favor; and 4) an injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc*, 555 U.S. 7 (2008); *The Real Truth About Obama, Inc. v. Federal Election Commission*, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, 559 U.S. 1089 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (per curiam). "[T]o survive summary judgment, [Plaintiff] must come forward with evidence from which it can be inferred that the defendant-officials were at the time suit was filed, and are at the time of summary judgment, knowingly and unreasonably disregarding an objectively intolerable risk of harm, and that they will continue to do so; and

3

finally to establish eligibility for an injunction, the inmate must demonstrate the continuance of that disregard during the remainder of the litigation and into the future." *Farmer v. Brennan*, 511 U.S. 825, 846 (1994).

Defendants assert that Plaintiff's claims that his life is in danger have been investigated and are unfounded.  Lieutenant Jason Harbaugh, the Intelligence Officer at NBCI, reviewed intelligence files to determine if there was any indication that Plaintiff's life was in jeopardy.  He discovered no credible information that would indicate that a "hit" has been placed on Plaintiff. ECF No. 6, Ex. 6.

Case Management Specialist Jason McMahan, also reviewed Plaintiff's base file and other electronic notes and could find no information to substantiate Plaintiff's allegations that he has enemies at NBCI. *Id*., Ex. 1.  McMahan avers that on January 29, 2014, he along with other correctional staff and members of the Psychology Department met with Plaintiff regarding Plaintiff's concerns.  Plaintiff was asked to provide any information that would substantiate his claims regarding being in danger and his need for a single cell.  Plaintiff provided McMahan a list of the names of 47 alleged enemies, but provided no other information to assist staff in verifying his concerns.  *Id*., Ex. 2 & 3.  McMahan notes that Plaintiff has three documented enemies, none of whom are incarcerated at NBCI.  *Id*., Ex. 4.  McMahan further notes that Plaintiff has been housed in a single cell since February 14, 2014, either due to his assignment on disciplinary segregation or placement on unassigned status. *Id*., Ex 1 & 5.  Case notes generated as a result of the meeting indicate that McMahan attempted to verify Plaintiff's claim that he had been provided protective custody status by former Assistant Warden Hill while housed at the Maryland House of Correction Annex.  McMahan was unable to verify this information after attempting to contact Hill and reviewing all of Plaintiff's base files and documents.  *Id*., Ex. 2, p. 2.

By way of background, Defendants offer that Plaintiff's file indicates that on April 1, 2009, Case Management Specialist Zies created an entry noting Plaintiff had written a letter of complaint which he refused to discuss same. *Id.*, Ex. 2, p. 31. At that time Plaintiff requested to be transferred to Patuxent Institution but it was noted that he had been transferred from Patuxent on December 1, 2008 and could only be referred there every three years. *Id.*, Ex. 2, p. 31; Ex. 5.

On April 29, 2009, May 27, 2009, November 12, 2009, and December 9, 2009, Plaintiff inquired about an Interstate Corrections' Compact (ICC) transfer. *Id.*, Ex. 2, p. 20, 21, 29, 30. He was advised that he did not meet the criteria for a voluntary ICC transfer. He was advised that one could be eligible for an involuntary transfer if custody staff believed an inmate's life was in danger at the current institution. *Id*, p. 29. Zies noted that Plaintiff was safely housed at NBCI. Plaintiff, however, indicated he would think about it. *Id.*

Plaintiff's claims have been investigated. No evidence to support his claims was found. The duty to protect inmates from a known risk of harm presented by other inmates does not encompass endorsement of fears unfounded by objective evidence. "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Rich v. Bruce*, 129 F. 3d 336, 339-40 (4th Cir. 1997). In light of the undisputed evidence, Defendants are entitled to judgment in their favor. A separate Order follows.


  October 29, 2014                              _____/s/_____
Date                                                    DEBORAH K. CHASANOW
                                                         United States District Judge